UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERRENCE BATTLE, et. al.,

                                        Plaintiffs,

              - against -

THE CITY OF NEW YORK, et. al.,

                                        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS BY CITY OF NEW YORK
AND RAYMOND KELLY**

**AND**

**MOTION TO INTERVENE BY NEW YORK STATE
FEDERATION OF TAXI DRIVERS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

LEGAL STANDARD UPON A MOTION FOR
DISMISSAL PURSUANT TO RULE 12(B)(6) ............................................................................ 2

ARGUMENT

        POINT I

                PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS
                MUST BE DISMISSED ............................................................................. 3

        POINT II

                PLAINTIFFS' CLAIMS FOR DECLARATORY
                RELIEF MUST BE DISMISSED ............................................................... 5

        POINT III

                PLAINTIFFS HAVE FAILED TO STATE A
                PLAUSIBLE CLAIM FOR MUNICIPAL
                LIABILITY ................................................................................................. 7

CONCLUSION ............................................................................................................................... 9

MOTION TO INTERVENE ......................................................................................................... 10

        I.       INTRODUCTION ................................................................................... 10

        II.      THE NATURE OF THE ASSOCIATIONS'S
                INTEREST IN THIS CASE ..................................................................... 10

        III.     THE LIVER DRIVERS ARE ENTITLED TO
                INTERVENE AS A MATTER OF RIGHT. .......................................... 12

                A.    THE TAXI DIVER'S HAVE A
                      COGNIZABLE INTEREST IN THE SUBJECT
                      OF THE ACTION ..................................................................... 13

B. ABSENT INTERVENTION, THE TAXI DRIVER'S INTEREST CAN BE IMPAIRED ................................... 14

C. THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT THE TAXI DRIVER'S INTERESTS .................................................................... 14

D. THE MOTION TO INTERVENE IS TIMELY .................................. 15

IV. THE TAXI DRIVER'S SHOULD BE ALLOWED PERMISSIVE INTERVENTION ............................................................. 16

V. CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                      **<u>Pages</u>**

<u>Ashcroft v. Iqbal</u>,
    129 S. Ct. 1937 (2008)..................................................................................................... 2, 3

<u>Butler, Fitzgerald & Potter v. Sequa Corp.</u>,
    250 F.3d 171 (2d Cir. 2001)................................................................................................ 14

<u>Chiste v. Travelocity.com, LP</u>,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010).................................................................................. 6

<u>City of Canton v. Harris</u>,
    489 U.S. 378 (1989)............................................................................................................. 7

<u>Connick v. Thompson</u>,
    131 S. Ct. 1350 (2011)........................................................................................................ 7

<u>Cont'l Cas. Co. v. Coastal Sav. Bank</u>,
    977 F.2d 734 (2d Cir. 1992)................................................................................................. 6

<u>Curry v. City of New York</u>,
    No. 10-CV-5847(LB), 2010 U.S. Dist. LEXIS 135461 (E.D.N.Y. Dec. 22, 2010) .................. 4

<u>DeShawn E. by Charlotte E. v. Safir</u>,
    156 F.3d 340 (2d Cir. 1998)................................................................................................. 4

<u>Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment Corp.</u>,
    No. 08 Civ. 1558(THK), 2009 U.S. Dist. LEXIS 21938 (S.D.N.Y. Mar. 2, 2009).............. 5, 6

<u>Farmland Dairies v. Comm'r</u>,
    847 F.2d 1038 (2d Cir. 1988)............................................................................................. 15

<u>Gentile v. Nulty</u>,
    No. 05 Civ. 7090(NRB), 2011 U.S. Dist. LEXIS 20537 (S.D.N.Y. Feb. 25, 2011) ................ 8

<u>Giaccio v. City of New York</u>,
    No. 07-3957-cv, 2009 U.S. App. LEXIS 1236 (2d Cir. Jan. 23, 2009).................................... 8

<u>Gianni Sport Ltd. v. Metallica</u>,
    No. 00 Civ. 0937(MBM), 2000 U.S. Dist. LEXIS 17339 (S.D.N.Y. Dec. 4, 2000) ................ 6

<u>Green v. City of New York</u>,
    465 F.3d 65 (2d Cir. 2006).................................................................................................... 8

<u>H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.</u>,
    797 F.2d 85 (2d Cir. 1986).................................................................................................. 16

**Cases**                                                                        **Page**

Hunt v. Washington State Apple Adver. Comm'n,
432 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977)............................ 12

ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp.,
699 F. Supp. 2d 664 (S.D.N.Y. 2010)........................................................ 6

Iqbal v. Hasty,
490 F.3d 143 (2d Cir. 2007)...................................................................... 3

MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,
471 F.3d 377 (2d Cir. 2006)...................................................................... 12

Monell v. Dep't of Social Services,
436 U.S. 658 (1978).................................................................................. 7

Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc.,
2003 U.S. Dist. LEXIS 9193 (S.D.N.Y. June 2, 2003)............................. 6

Neusse v. Camp,
385 F.2d 694 (D.C. Cir. 1967)................................................................. 14

People v. Abad,
98 N.Y.2d 12 (2002) ............................................................................. 1, 5

O'Shea v. Littleton,
414 U.S. 488 (1974).................................................................................. 4

Patterson v. County of Oneida,
375 F.3d 206 (2d Cir. 2004)...................................................................... 8

Peck v. Baldwinsville Central School Dist.,
351 Fed. Appx. 477 (2d Cir. 2009) ....................................................... 4, 5

Reynolds v. Guiliani,
586 F.3d 183 (2d. Cir. 2007)..................................................................... 8

Ricciuti v. N.Y.C. Transit Auth.,
941 F.2d 119 (2d Cir. 1991)...................................................................... 8

Sarus v. Rotundo,
831 F.2d 397 (2d Cir. 1987)...................................................................... 7

Shain v. Ellison,
356 F.3d 211 (2d Cir. 2004)...................................................................... 4

**Cases**                                                                                      **Page**

Trbovich v. United Mine Workers,
    404 U.S. 528, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972) ............................................... 14

Twombly v. Bell Atlantic Corp.,
    550 U.S. 544 (2007) ......................................................................................... 2, 3, 8

United States v. Doherty,
    786 F.2d 491 (2d Cir. 1986) .............................................................................. 6

United States v. Pitney Bowes, Inc.,
    25 F.3d 66 (2d Cir. 1994) .................................................................................. 15

Warth v. Seldin,
    422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975) ...................................... 13

Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,
    922 F.2d 92 (2d Cir. 1990) ................................................................................ 13

Wilton v. Seven Falls Co.,
    515 U.S. 277 (1995) ......................................................................................... 6

**Statutes**

Fed. R. Civ. P. 24 ...................................................................................................... 12, 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- x

TERRANCE BATTLE, et. al.,

                                  Plaintiffs,

                    -against-

THE CITY OF NEW YORK, et. al.,

                                  Defendants.

----------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY CITY OF NEW YORK AND RAYMOND KELLY**

**AND**

**MOTION TO INTERVENE BY NEW YORK STATE FEDERATION OF TAXI DRIVERS**

11 Civ. 3599 (RMB)(HBP)

## MOTION TO DISMISS

### PRELIMINARY STATEMENT

Defendants City of New York (the "City") and Raymond Kelly hereby respectfully submit their Memorandum of Law in Support of their Motion to Dismiss plaintiff's First Amended Complaint against it pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. For the reasons set forth herein, plaintiffs have failed to state plausible claims against the City and Kelly upon which relief may be granted, thus, dismissal of their First Amended Complaint against these defendants with prejudice is required.

### STATEMENT OF FACTS

The New York City Police Department (the "NYPD") maintains what is known as the Taxi/Livery Robbery Inspection Program ("TRIP"), wherein police officers may stop livery cab cars displaying decals indicating that the drivers are enrolled in the program to determine if

the drivers are safe.[1]   (First Am. Compl., ¶3)   Plaintiffs allege that they were wrongfully

questioned/searched/frisked on one occasion each as passengers in livery cabs.   Plaintiffs seek

compensatory damages, injunctive relief and declaratory relief based on a municipal liability

theory against the City and Kelly.   (First Am. Compl.)[2]

Plaintiff Battle alleges that he resides in Brooklyn and frequently takes livery cars

late at night in connection with his work.   (First Am. Compl., ¶¶11-13)   Despite the frequency

with which he has ridden in livery cabs, he alleges only one incident, on October 30, 2010, in

which he contends that he was wrongfully questioned/searched/frisked when certain NYPD

officers stopped the livery cab in which he was a passenger pursuant to the TRIP program.   (First

Am. Compl., ¶¶11-38)

Plaintiff Pujara alleges that he resides in Harlem and regularly takes livery cabs in

connection with his work in the Bronx. (First Am. Compl., ¶¶39-41)   Despite the frequency with

which he has ridden in livery cabs, he also alleges only one incident, on September 3, 2010, in

which he contends that he was wrongfully questioned/searched/frisked when certain NYPD

officers stopped the livery cab in which he was a passenger pursuant to the TRIP program.   (First

Am. Compl., ¶¶39-55)

## LEGAL STANDARD UPON A MOTION FOR DISMISSAL PURSUANT TO RULE 12(B)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2008) (quoting Twombly v. Bell Atlantic Corp., 550 U.S. 544, 570

---

[1]   The constitutionality of the TRIP program was affirmed by the Court of Appeals of the State of New York in People v. Abad, 98 N.Y.2d 12 (2002).
[2] Plaintiffs also have made claims against the individual defendant police officers.  Plaintiffs do not seek injunctive against the individual officers.  To the extent that plaintiffs seek declaratory relief against the individual officers, the same reasons mandating dismissal of plaintiffs' claims for declaratory relief against the City and Kelly would apply equally or to a greater extent against the individual officers.

(2007)).  A claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (quoting Twombly, 550 U.S. 544 at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

Two working principles determine whether a complaint may survive a motion to dismiss.  Ashcroft, 129 S. Ct. at 1949.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. 544 at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'").  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. (citing Twombly, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'-- 'that the pleader is entitled to relief.'"  Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

**ARGUMENT**

**POINT I**

**PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS MUST BE DISMISSED**

As seen, plaintiffs seek injunctive relief in the First Amended Complaint. More specifically, plaintiffs ask the Court in their prayer for relief to "[i]ssue an injunction prohibiting the City of New York and its employee police officers from detaining, questioning, frisking and/or searching passengers in vehicles enrolled in TRIP in the absence of independent information about the passenger's conduct that would authorize any such action and order any and all relief necessary and appropriate to implement this injunction . . .."

To establish standing for injunctive relief, plaintiffs must demonstrate "*both* a likelihood of future harm *and* the existence of an official policy or its equivalent." Peck v. Baldwinsville Central School Dist., 351 Fed. Appx. 477, 479 (2d Cir. 2009) (quoting and adopting the reasoning of Shain v. Ellison, 356 F.3d 211, 216 (2d Cir. 2004) ("Shain II") (emphasis in original). "A plaintiff 'cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future.'" Shain II, 356 F.3d at 215 (quoting DeShawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974). "In other words, plaintiffs asserting an injunction . . . must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right." Curry v. City of New York, No. 10-CV-5847 (SLT) (LB), 2010 U.S. Dist. LEXIS 135461, at *8 (E.D.N.Y. Dec. 22, 2010) (internal citation omitted). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" Shain II, 356 F.3d at 215 (quoting O'Shea, 414 U.S. at 494).

As plaintiffs have each had only one alleged wrongful experience with NYPD officers under the TRIP program out of all the times that they have taken livery cabs, they cannot

establish the requisite likelihood that they will be injured in the future. The plaintiffs' assertions that they "continue[] to use livery cabs" and that they "fear [they will] have another similar encounter with the police" (First Am. Compl., ¶¶ 38, 59) are merely hypothetical, speculative and conjectural bases for requesting injunctive relief, at best. As such, plaintiffs lack standing to seek injunctive relief for this reason alone, and their claims requesting injunctive relief must be dismissed.

Additionally, plaintiffs cannot establish the second prong of the standing test set forth in Peck, namely the "existence of an official policy or its equivalent" [which caused the harm alleged]. To the contrary, the TRIP program, as found by the New York Court of Appeals in People v. Abad, 98 N.Y.2d 12 (2002), the TRIP program is constitutional and there is no evidence of an official policy of wrongfully stopping/searching/frisking passengers during said stops in connection with the TRIP program. To the extent that plaintiffs have presented claims of two incidents within a city as large as New York City, they are clearly isolated incidents, and do not amount to an "official policy or its equivalent." Plaintiffs have wholly failed to allege the required factual support for their bald allegation that the NYPD has a policy of wrongfully searching passengers in implementing the TRIP program. As such, for this reason as well, plaintiffs' claims for injunctive relief must be dismissed.

## POINT II

### PLAINTIFFS' CLAIMS FOR DECLARATORY RELIEF MUST BE DISMISSED

Plaintiffs also seek declaratory relief in connection with the two incidents alleged. Specifically, plaintiffs in their prayer for relief ask the Court to "[i]ssue a declaratory judgment that the defendants' actions have violated and do violate the Fourth and Fourteenth Amendments

of the United States Constitution, the Constitution of the State of New York, and the common law of New York . . .".

"Federal courts have 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" <u>Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment Corp.</u>, No. 08 Civ. 1558 (RMB)(THK), 2009 U.S. Dist. LEXIS 21938, at *35 (S.D.N.Y. Mar. 2, 2009) (quoting <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995)); <u>see also</u> <u>Chiste v. Travelocity.com, LP</u>, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010). In deciding whether to exercise this jurisdiction, the Second Circuit has held that courts should consider "whether a declaratory judgment will [i] 'serve a useful purpose in clarifying and settling the legal relations in issue'; or [ii] 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" <u>Dolphin Direct</u>, 2009 U.S. Dist. LEXIS 21938, at *35 (quoting <u>Cont'l Cas. Co. v. Coastal Sav. Bank</u>, 977 F.2d 734, 737 (2d Cir. 1992)).

Plaintiffs' claims for declaratory relief must be dismissed as there is no "actual controversy between the parties" as required for declaratory relief to lie. <u>In re REFCO Inc. Securities Litig.: Krys v. Aaron</u>, No. 07-md-1902 (JSR), No. 08-cv-7416 (JSR), 2010 U.S. Dist. LEXIS 142588, at *41 (S.D.N.Y. July 19, 2010) (citing <u>United States v. Doherty</u>, 786 F.2d 491, 498-99 (2d Cir. 1986)). To warrant declaratory relief, "[t]here must be a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp.</u>, 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

Past acts do not constitute an appropriate basis for invoking declaratory relief. <u>Chiste v. Travelocity.com, LP</u>, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) ("There is no basis for

declaratory relief where only past acts are involved.") (quoting <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc.</u>, 2003 U.S. Dist. LEXIS 9193, at *15 (S.D.N.Y. June 2, 2003)); <u>Gianni Sport Ltd. v. Metallica</u>, No. 00 Civ. 0937 (MBM), 2000 U.S. Dist. LEXIS 17339, at *11 (S.D.N.Y. Dec. 4, 2000) ("Any damages that are due have already accrued.  Therefore, Gianni will not 'avoid the accrual of avoidable damages by means of this action.'"); 12 Moore's Federal Practice § 57.04(3) (3rd Ed. 2004) ("[d]eclaratory relief is inappropriate to adjudicate past conduct, such as when the damages have already accrued").

The entirety of the dispute between plaintiffs and defendants arises out of past acts, the two stops that they allege were wrongful in this case.  There is no present or ongoing controversy between the parties.  As such, declaratory relief does not lie and plaintiffs' claims seeking same must be dismissed as well.

## POINT III

### PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE CLAIM FOR MUNICIPAL LIABILITY

In order to hold a municipality liable as a "person" within the meaning of § 1983, plaintiff must demonstrate that a policy or custom of the City of New York caused the deprivation of his federal or constitutional rights.  <u>Connick v. Thompson,</u> 131 S. Ct. 1350, 1359 (2011); <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690-91 (1978); <u>see also</u> <u>Sarus v. Rotundo</u>, 831 F.2d 397, 400 (2d Cir. 1987).  Plaintiff must demonstrate "a direct causal link between a municipal policy or custom…and the alleged constitutional deprivation."  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).  Furthermore, the identified municipal policy or practice must be the "moving force of the constitutional violation."  <u>Monell</u>, 436 U.S. at 694.  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy

for purposes of § 1983." <u>Connick,</u> 131 S. Ct. at 1359.  In order to prove liability for failure to train, plaintiff must demonstrate a "pattern of similar constitutional violations" by employees sufficient to place policymakers on notice "that a course of training is deficient in a particular respect." <u>Connick v. Thompson,</u> 131 S. Ct. 1350, 1360 (2011).

A plaintiff must prove a "pattern" of misconduct that is "*sufficiently persistent or widespread* so as to acquire the force of law," <u>Reynolds v. Guiliani</u>, 586 F.3d 183, 192 (2d. Cir. 2007) (emphasis added), and which has violated the civil rights of persons "repeatedly." <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991);  <u>see also</u> <u>Giaccio v. City of New York</u>, No. 07-3957-cv, 2009 U.S. App. LEXIS 1236, at *3 (2d Cir. Jan. 23, 2009) ("[Plaintiff] identifies, at most, only four examples [of conduct].  This evidence falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability."); <u>Green v. City of New York,</u> 465 F.3d 65, 80 (2d Cir. 2006)(quoting <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 226 (2d Cir. 2004)) ("a Section 1983 action may be maintained based on a practice that was 'so persistent or widespread' as to constitute  'a custom or usage with the force of law"); <u>Gentile v. Nulty</u>, No. 05 Civ. 7090 (NRB), 2011 U.S. Dist. LEXIS 20537, at *31 (S.D.N.Y. Feb. 25, 2011) (citing <u>Giaccio</u> and finding that two examples of similar conduct were insufficient to show a "persistent and widespread" pattern as required for municipal liability to lie).

In this case, plaintiffs can only point to two isolated incidents of alleged misconduct in connection with the TRIP program in the entire City of New York.  Beyond that, plaintiffs are unable to provide any factual support for their municipal liability theory.  As such, plaintiffs are unable to meet the requirements of <u>Iqbal</u> and <u>Twombly</u> and their claims for compensatory damages must also be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants City and Kelly's motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, must be granted and plaintiffs' First Amended Complaint against these defendants dismissed with prejudice.

Dated:   New York, New York
            August 5, 2011

MICHAEL A. CARDOZO
Corporation Counsel of the
  City of New York
Attorney for Defendants City of New York and
Raymond Kelly
100 Church Street, Room 3-211
New York, New York 10007
(212) 442-8248

By:  _____/s/_____
        MARK D. ZUCKERMAN

**MOTION TO INTERVENE**

**I.   INTRODUCTION**

   This memorandum supports the Motion of the New York State Federation of Taxi Drivers (hereinafter "Taxi Driver's) to intervene as Defendant pursuant to Federal Rule of Procedure 24(a) as a matter of right in the action filed by Plaintiff's Terrence Battle and Munir Pujara, in which Plaintiff's challenge the constitutionality of the New York City Police Department's (hereinafter "N.Y.P.D's") enforcement of the "Taxi/Livery Robbery Inspection Program" (hereinafter "TRIP").  See, Exhibit A (Plaintiff's Complaint") In the alternative, the Taxi Driver's move for permissive intervention as Defendants pursuant to Federal Rule of Procedure 24(b).

**II.   THE NATURE OF THE ASSOCIATIONS'S INTEREST IN THIS CASE**

   The New York State Federation of Taxi Driver's was founded approximately 14 years ago by Fernando Mateo, who is also their current spokesperson.  They are a not for profit trade organization, having been granted Federal 501(c)(3) status.  Jose Viloria is the current President. The drivers are independent owner-operators of Livery cabs that operate within the boroughs of the City of New York.  They consist of approximately 20,000 member drivers in total, of which ten to twenty percent participate in the TRIP Program.  One of the central reasons propelling the creation of the Taxi Driver's was to organize an effective response against the rampant wave of violence and crime that existed on the streets within which they operate.  Sadly, the Taxi Driver's found themselves to be easy targets for criminals looking to victimize them, knowing full well they carried cash on hand.

   The TRIP program was established in conjunction with the N.Y.P.D. in or about 1994 to deal with the unfortunate issue of violence and crime facing their membership.  It is voluntary program that allows respective Taxi Driver's to participate by signing-up at their local

precinct.  Specifically, participating Taxi Driver's are given a decal to prominently display in their window, which authorizes the N.Y.P.D to pull their livery cars over to conduct safety checks.  <u>See</u>, Exhibit B.  In so doing, the Taxi Drivers consents to being pulled over by the N.Y.P.D., who simply check on the respective drivers to ensure their safety in an effort to detect and deter criminality.   The importance of  TRIP program cannot be overstated.  In fact, the Program  is a matter of life or death as it credited with preventing Taxi Drivers from being shot, stabbed, beaten, robbed and otherwise being made victims of brutally violent crimes involving dangerous weapons.  <u>See</u>, Exhibit C .

In short, the Taxi Driver's see the TRIP program as one that saves lives, primarily due to the aggressive though lawful steps of the N.Y.P.D.  Plaintiffs herein take two isolated instances wherein they allege violations of constitutional dimensions.  In so doing, they attempt to caste aspersions on the entirety of the program by alluding to the overall practices and patterns of the N.Y.P.D. in administering same.  In short, the lawful police stops that are authorized under this program are saving lives and the Taxi Driver's fear that the Plaintiff's lawsuit will have a chilling affect upon aggressive yet lawful police enforcement.   It is improper to take two isolated, largely anecdotal situations involving alleged enforcement violations and attempt to suggest that this is the norm with regard to TRIP.  Plaintiff's in effect paint a picture of lawlessness as it relates to this program.  This could no be further from the reality.

To the extent that the TRIP Program is invaluable and more livery drivers are alive today as a result of it, and to the extent that Plaintiffs' seek to cast aspersions on the effective administration of same, the Taxi Driver's seek to intervene in this action. Constitutional violations must be evaluated on a case by case basis, and the TRIP Program should not viewed or otherwise used to suggest that police are engaging in improper or unlawful

behavior as a matter of course. That is not at all the experience of the Taxi Driver's whom the police effectively protect on a persistent and ongoing basis.

### III. THE LIVER DRIVERS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Rule 24(a)(2) governs motions for intervention as of right. The Rule provides:

On timely motion, the court must permit anyone to intervene who. . .claims an interest relating to the property or transaction that is the subject matter of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24 (a)(2). Under this circuit's precedents, an applicant must be granted leave to intervene as of right when all four of the following conditions are met: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." See, MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006).

The Taxi Driver's meet each of these requirements. It has a concrete interest in this case sufficient to satisfy Rule 24 (a)(2). Additionally, it has the requisite standing under Article III of the Constitution to assert claims on behalf of their members. An organization has standing to bring suit on behalf of its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and © neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." See, Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977).

**A.  THE TAXI DIVER'S HAVE A COGNIZABLE INTEREST IN THE  SUBJECT OF THE ACTION**

The Taxi Driver's seek to enter this case in defense of the alleged practice and or pattern asserted by Plaintiffs with regard to the N.Y.P.D.'s enforcement of the TRIP Program. The assertions by Plaintiff that the N.Y.P.D. as a matter of course engages in improper, unlawful, and unauthorized searches is simply not in keeping with the experience of the Taxi Driver's who observe what occurs on the streets everyday.  Were such baseless allegations to prevail, the TRIP program may very well be jeopardized, thereby potentially leading to an increase in violent and senseless crimes against them, including robbery and murder.  The interest in seeing the Program continue unabated in its current lawful context, and the problems that could befall the Taxi Driver's if there were a chill in police enforcement of this program give rise to the type of tangible benefits and concrete factual concerns for which the Court has found that intervention is proper.  See, Warth v. Seldin, 422 U.S. 490, 508, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975). Simply stated, in order for an interest to be cognizable under Rule 24, it must be "direct, substantial, and legally protectable." See, Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990).

In evaluating the cognizable interest, it is important to look at how the Driver's would be adversely affected in the event that the Plaintiff's prevailed in their assertion that the TRIP Program is rife with a pattern of lawlessness and police abuse.  This could lead to the gutting of the Program or its outright dismantling, thereby resulting in a concomitant spike in crimes against the cab drivers–a most undesirable and indeed deadly result.  There is most certainly a substantial interest in the outcome of this litigation inasmuch as any alteration of the program could have devastating consequences on its present and future viability.

## B. ABSENT INTERVENTION, THE TAXI DRIVER'S INTEREST CAN BE IMPAIRED

In looking at how the Taxi Driver's interest can be impaired, one need only look at the totality of the cognizable interest here, to wit, the need for an effective TRIP Program to be administered by the police. To the extent that the smooth functioning of the program assists in a myriad of respects with regard to preventing violent crime and driver abuse, impairment would be easy to discern. In short, in the event that the Taxi Driver's are not permitted to enter this action and to provide evidence and information as to the Program's vitality and success, the Plaintiff's misguided assertions as to the practice and pattern of police misconduct may prevail, thereby potentially watering down the program, and stripping it of its vitality.

In Neusse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967), the Court noted: "We know from the recent amendments to the civil rules that in the intervention area, the "interests" test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficient and due process". The Neuss Court went on to discuss the liberal standards in intervening, noting: "interestingly, an earlier draft would have required the judgment "substantially" impair or impede the interest, but that higher barrier was deleted in the course of improving the amendment. Id. at 701. This threshold is easily met here.

## C. THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT THE TAXI DRIVER'S INTERESTS

The Taxi Driver's are not adequately represented in this action. As noted by the Supreme Court, "the burden to demonstrate inadequacy of representation is generally speaking 'minimal.'" See, Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001) (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972)). Intervention is therefore permitted "unless it is clear that the [existing] party will

provide adequate representation for the absentee." 7C Charles Alan Wright, et al. Federal Practice and Procedure § 1909 (3d ed. 2007).

To the extent that the Taxi Driver's are in the best position to know how the TRIP program is administered and to assess and otherwise provide factual details regarding the N.Y.P.D.'s behavior and comportment, they should most certainly take part in this action. To exclude them from participation would not be in keeping with fairness, justice or notions of equity.  It is they who will gain or lose the most by the ultimate determination made by the Court.   For this reason, the Taxi Driver's request that the Court permit intervention.

**D.**	**THE MOTION TO INTERVENE IS TIMELY**

In exercising its discretion to permit intervention, the court must consider whether the intervention will "unduly delay or prejudice he adjudication of the original parties' rights." Federal Rule of Civil Procedure  (b)(3).   The determination of the timeliness is within the discretion of the district court, "evaluated against the totality of the circumstances before the court." See, Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. and Markets, 847 F.2d 1038, 1043-44 (2d Cir. 1988) Circumstances considered in this determination include: "(1) how long the applicant had notice of the interest before [he] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." See, United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994).  Here, the Plaintiff's filed their lawsuit on May 26, 2011–not even two weeks ago.  It would be hard to imagine how the instant motion might be perceived as untimely.   The Defendants herein have not even responded with an Answer to the allegations asserted by the Plaintiff's therein.

# IV. THE TAXI DRIVER'S SHOULD BE ALLOWED PERMISSIVE INTERVENTION

If this Court is not inclined to grant intervention as of right, the Taxi Driver's request that the Court authorize permissive intervention under Rule 24(b). The rule provides:

On timely motion, the court may permit anyone to intervene who. . . has a claim or defense that shares with the main action a common question of law or fact. . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties rights. Permissive intervention "is discretionary with the trial court." See, H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986). For all of the foregoing reasons, the Taxi Driver's ask this Court to exercise this discretion in a manner which permits their direct and substantial involvement in this matter.

# V. CONCLUSION

For the foregoing reasons, this Court should grant the Taxi Driver's intervention as of right under Rule 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b). The Taxi Driver's also concur in the motion to dismiss filed by the City and Kelly.

Date:  New York, New York
       August 4, 2011


_____/s/_____
JOEY JACKSON, ESQ.
Attorney for Intervener
KOEHLER & ISAACS, LLP
61 Broadway, 25TH Floor
New York, New York 10006
(917) 551-1300