UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TERRENCE BATTLE and MUNIR PUJARA,   :
   :
         Plaintiffs,   :
   :
  -versus-   :
   :       11 Civ. 3599 (RMB/HP)
THE CITY OF NEW YORK; RAYMOND W.   :
KELLY, Commissioner of the New York City   :
Police Department; WENDELYN COSTANZA,   :
PHILIP FACENDA, MICHAEL MILLER,   :
TOMAS REYES, and JEFF TORREDA, members :       ECF Case
of the New York City Police Department,   :
   :
         Defendants.   :
-------------------------------------------------------------x


# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO NEW YORK STATE FEDERATION OF TAXI DRIVERS' MOTION TO INTERVENE

Respectfully submitted,


CHRISTOPHER DUNN
ARTHUR EISENBERG
DANIEL MULLKOFF
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300

Counsel for the Plaintiffs

Dated: September 9, 2011
     New York, N.Y.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT ................................................................................................... 5

I. THE COURT SHOULD DENY THE CITY'S MOTION TO DISMISS
BECAUSE IT FAILS TO ADDRESS THE FACTS AS ALLEGED IN
THE COMPLAINT. ................................................................................. 5

    A.    The Complaint Alleges Facts Sufficient to Establish a Plausible
         Claim for Injunctive Relief. .................................................................. 6

    B.    The Complaint Alleges Facts Sufficient to Establish a Plausible
         Claim for Declaratory Relief. ............................................................ 11

    C.    The Complaint Alleges Facts Sufficient to Establish a Plausible
         Claim for Municipal Liability. ........................................................... 11

II. THE COURT SHOULD DENY THE MOTION TO INTERVENE BECAUSE
THE FEDERATION DOES NOT MEET THE REQUIREMENTS
FOR INTERVENTION. ......................................................................... 15

    A.    The Court Should Deny the Motion for Intervention As of Right. ...... 17

         1.    The Federation lacks a direct, legally protectable interest. ...... 17

         2.    The Federation's ability to protect its interest will not be impaired
            by the disposition of this action ............................................. 20

         3.    The current defendants will fully represent the Federation's interests. ... 22

    B.    The Court Should Deny Permissive Intervention. .............................. 24

CONCLUSION ............................................................................................... 25

TABLE OF AUTHORITIES

Cases

*Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004) .......................... 13. 14

*Amnesty International v. Clapper*, 638 F.3d 118 (2d Cir. 2011) ........................................ 7, 9, 10

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ........................................................................ 6

*Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001) ............................................. 17-18

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2005) ............................................................. 7

*Bray v. City of New York*, 346 F. Supp. 2d 480 (S.D.N.Y. 2004) ................................................. 9

*British Airways Bd. v. Port Authority of New York and New Jersey*,
    71 F.R.D. 583 (S.D.N.Y. 1976) ............................................................................ 16, 22, 24, 25

*Bryan County Commissioners v. Brown*, 520 U.S. 397 (1997) .................................................... 12

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) ........................... 22-23

*Chevron Corp. v. Donziger*, 2011 WL 2150450 (S.D.N.Y. May 31, 2011) .................. 17, 19, 22

*Colon-Rodriguez v. New York City Dept. of Correction*, 2009 WL 995181
    (S.D.N.Y. Apr. 13, 2009) .................................................................................... 13

*Cooper v. Metropolitan Transp. Authority*, 2006 WL 1975936 (S.D.N.Y. July 14, 2006) ........ 14

*Cortlandt v. Westchester County*, 2007 WL 3238674 (S.D.N.Y. Oct. 31, 2007) ................. 13-14

*Crown Financial Corp. v. Winthrop Lawrence Corp.*, 531 F.2d 76 (2d Cir. 1976) .................. 19

*DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340 (2d Cir. 1998) ........................................ 7

*Jackson v. Rikers Island Facility*, 2011 WL 3370205 (S.D.N.Y., Aug. 2, 2011) ..................... 2, 7

*Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d. 501 (S.D.N.Y. 2008) ........................................... 14

*Kalu v. City of New York*, 2008 WL 4344592 (S.D.N.Y. Sept. 16, 2008) .................................. 14

*LaRue v. New York City Off-Track Betting Corp.*, 2004 WL 2793195
(S.D.N.Y. Dec. 6, 2004) ......................................................................................... 12

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 346352
(S.D.N.Y. June 25, 1996) ....................................................................................... 22

*Louis Berger Group, Inc. v. State Bank of India*, --- F. Supp. 2d ----, 2011 WL 35855043
(S.D.N.Y. Aug. 9, 2011) ......................................................................................... 21

*MasterCard Intern. Inc. v. Visa Intern. Service Ass'n, Inc.*,
471 F.3d 377 (2d Cir. 2006) ............................................................................. 20, 21

*Monell v. City of New York City Dep't of Social Services*, 436 U.S. 658 (1978) ................. 11, 12

*National Congress for Puerto Rican Rights v. City of New York*,
75 F. Supp. 2d 154 (S.D.N.Y. 1999) ......................................................................... 10

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ............................................................... 20, 21

*People v. Abad*, 98 N.Y.2d 12 (2002) ..................................................................................... 15

*Okin v. Village of Cornwall-on-Hudson Police Department*,
577 F.3d 415 (2nd Cir. 2009) ......................................................................... 12, 13, 14

*R Best Produce, Inc. v. Shulman-Rabin Marketing Corp.*, 467 F.3d 238 (2d Cir. 2006) ........... 17

*Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*,
725 F.2d 871 (2d Cir. 1984) ............................................................................... 19, 20

*Rodriguez v. Pataki*, 211 F.R.D. 215 (S.D.N.Y. 2002) ........................................................ 19, 25

*Roe v. City of New York*, 151 F. Supp. 2d 495 (S.D.N.Y., 2001) ............................................. 9, 10

*Saenz v. Lucas*, 2008 WL 2735867 (S.D.N.Y. July 9, 2008) ...................................................... 13

*Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004). ..................................................................... 7

*U.S. Postal Service v. Brennan*, 579 F.2d 188 (2d Cir. 1978) ..................................................... 24

*Union Switch & Signal, Inc. v. St. Paul Fire and Marine Ins. Co.*,
    226 F.R.D. 485 (S.D.N.Y. 2005) ............................................................................................. 21

*United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411 (2d Cir. 2001) ....................... 18, 19

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994) .................................................... 17

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
    782 F. Supp. 870 (S.D.N.Y. 1991) ........................................................................................... 18

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................................................... 20

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990) ...................................................................................................... 20

## PRELIMINARY STATEMENT

This case presents a challenge to a New York City Police Department practice -- under a program known as the Taxi/Livery Robbery Inspection Program (TRIP) -- by which police officers stop livery cabs without suspicion and then, without any further suspicion, proceed to detain, question, frisk, and search passengers in those vehicles. The plaintiffs, who as passengers both were subjected to this unlawful treatment, do not challenge the vehicle stops but do seek an injunction halting the supicionless mistreatment of passengers, as well as related declaratory and compensatory relief.

This memorandum responds to two separate motions filed in this matter: a partial motion to dismiss filed by the defendants and a motion to intervene filed by an organization representing the interests of some drivers of livery cabs. Both motions are without merit, though the plaintiffs have no objection to the organization participating as *amicus curiae* in this matter.

With respect to the City's partial motion to dismiss, the Court should deny it for the simple reason that it ignores the allegations of the complaint and instead is based on a set of facts far more limited than those set out in the complaint. Reduced to its essence, the complaint alleges the NYPD has an official program under which police officers stop livery cars; alleges the department has a standard practice during such stops of detaining, questioning, and searching passengers without suspicion of any wrongdoing by the passenger; and alleges the plaintiffs regularly ride in livery cars, already have experienced such encounters, and are likely to experience further such encounters because they have little choice but to rely on livery cars given the lack of yellow cabs in their neighborhoods.

In its motion the City never acknowledges these facts, arguing instead that the complaint

1

must be dismissed because it only alleges two isolated incidents and a fear of future incidents. It is axiomatic, however, that a motion to dismiss must accept as true the facts of the complaint and all reasonable inferences drawn from those facts. The City's failure to do this renders its legal arguments irrelevant, and its motion is without merit.

As for the motion to intervene by the New York State Federation of Taxi Drivers (the Federation), the Court should also deny that. The Federation asserts an understandable interest in the TRIP program and officer stops of vehicles to check on driver safety. The plaintiffs, however, do not challenge the vehicle stops -- challenging instead only the unlawful treatment of law-abiding passengers -- and nothing in this case threatens the TRIP program generally. Moreover, the City is fully protecting any interest the Federation has in this matter. Intervention would serve no meaningful purpose, and the Federation can advance its interests through participating as an *amicus curiae*.

## STATEMENT OF FACTS

As this Court recently noted, on a motion to dismiss "a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor." *Jackson v. Rikers Island Facility*, 2011 WL 3370205, at *1 (S.D.N.Y. Aug. 2, 2011) (citation and internal quotations omitted). In light of this standard, the relevant facts are as follows.

Plaintiff Terrence Battle is a 38-year old African-American who is a manager at two prominent New York City radio stations and who lives in the Bedford-Stuyvesant section of Brooklyn. *See* First Amended Complaint ¶¶ 11-12 (July 21, 2011). Plaintiff Munir Pujara is a 37-year old attorney of South Asian descent who works at a social-services agency in the northwest Bronx and resides in Harlem. *See id.* ¶¶ 39-40. Both had notably similar experiences

with members of the New York City Police (NYPD) while traveling as passengers in livery cars.

The NYPD has a program, created in 1994 and known as the Taxi/Livery Robbery Inspection Program (TRIP), under which enrolled livery cars are stopped by police officers without suspicion. Participating livery cars bear a decal stating, "This vehicle may be stopped and visually inspected by the police at any time to ensure the driver's safety." In 2009 alone, an NYPD initiative resulted in hundreds of liveries enrolling in the program. *See id.* ¶¶ 60-61, 63.

In late October 2010 Mr. Battle was returning home late at night when he got in a livery cab for the trip from his local subway station to his home in Bedford-Stuyvesant. Shortly before arriving at his residence, the livery car was pulled over by three police officers in plain clothes. One officer approached the driver and asked if everything was alright, and the driver told him that everything was fine. The officers then ordered Mr. Battle to get out of the car, facing him from the street and blocking any movement on his part. They then demanded that he provide his identification, frisked him, searched his pockets, and searched a bag he had with him. As he was being frisked, Mr. Battle asked why he was being searched, and one officer stated that it was routine. He specifically pointed to the TRIP decal on the livery car and said they were allowed to search Mr. Battle under the TRIP program. Finding no evidence of anything unlawful, the officers told Mr. Battle was free to go, and he again pressed about the reason for their mistreatment of him. They stated that he had consented to the treatment when he entered a car with a TRIP decal and again stated that their actions were part of a routine stop under TRIP. Not surprisingly, Mr. Battle was frightened by this encounter, which occurred around 3:30 in the morning, and he was deeply worried about his personal safety. He filed a complaint with the New York City Civilian Complaint Review Board the following day. *See id.* ¶¶ 14-29, 35.

Mr. Pujara had a similar experience the month before, albeit with a different set of

officers and in the Bronx instead of Brooklyn. Late on a Friday night in early September, he got into a livery cab at his office to return to his home in Harlem. After traveling only a short distance, the livery car was pulled over by two police officers. One officer approached the driver's side of the car and asked the driver if everything was okay; the driver told him everything was fine. The two officers opened the passenger door where Mr. Pujara was seated and told him to get out of the car. When he asked if he was suspected of any wrongdoing, they said he was not; when he asked what would happen if he did not get out of the car, they told him he would be arrested. *See id.* ¶¶ 42-46.

Mr. Pujara then got out of the livery car and was told to turn around and place his hands on the roof of the car. Having previously represented a client involved in a TRIP stop, he was familiar with the TRIP program and understood that passengers could not be legally searched without suspicion. When he told the officers they could not search him without his consent, they insisted they could because of "the program," referring to TRIP. Mr. Pujara continued to object, and an officer then specifically pointed to the TRIP decal on the car and said "it shows it right there." After then being forcibly frisked and searched, Mr. Pujara continued to object, which prompted one of the officers to repeat that this was just part "of the program" and to state that officers would be doing such frisks more often. Having found no evidence of any wrongdoing, Mr. Pujara was allowed to walk away from the livery car. As had Mr. Battle, Mr. Pujara promptly filed an official complaint with the Civilian Complaint Review Board. *See id.* ¶¶ 47-55.

Livery cars are the primary form of for-hire passenger service outside Manhattan, as 97% of yellow cab pickups are in Manhattan or at the airports. *See id.* ¶ 62. Given where they live and given the difficulty of hailing yellow cabs outside of Manhattan, both Mr. Battle and Mr.

4

Pujara have little choice but to rely on livery cars. As a result of their encounters, however, both of them are anxious when taking livery cars, fearing that they again may be mistreated by police officers pursuant to the TRIP program. *See id.* ¶¶ 38, 59.

Consistent with the statements of the officers who stopped Mr. Battle and Mr. Pujara that their treatment was standard procedure under TRIP, livery drivers of vehicles enrolled in the program report that police officers detain, question, frisk, and search passengers, even after the drivers inform the officers that there is nothing wrong in the car. *See id.* ¶¶ 66. The NYPD Patrol Guide, which contains policies and procedures for NYPD officers, contains no guidelines governing the actions of officers conducting stops under TRIP. *See id.* ¶ 68.

## ARGUMENT

### I. THE COURT SHOULD DENY THE CITY'S MOTION TO DISMISS BECAUSE IT FAILS TO ADDRESS THE FACTS AS ALLEGED IN THE COMPLAINT.

Alleging violations of their Fourth Amendment rights and of state law, the plaintiffs seek two principal forms of relief: (1) an injunction (and related declaratory relief) against the NYPD's practice, under TRIP, of detaining questioning, frisking, and searching livery car passengers without suspicion; and (2) compensatory damages against the City of New York and the individual defendant officers arising out of the unlawful treatment of Mr. Battle and Mr. Pujara. *See* First Amended Complaint at 13.[1]

The City does not move to dismiss the damage claims against the individual officers, so those will proceed regardless of the disposition of the City's motion. And the City does not

---

[1] The plaintiffs also seek attorneys' fees and costs and any other relief the Court deems appropriate, but those are not relevant to the pending motion.

dispute that the alleged treatment of the plaintiffs was unlawful. Rather, the City asserts in its motion for partial dismissal of the complaint under Rule 12(b)(6) that the plaintiffs cannot obtain injunctive or declaratory relief and cannot obtain any relief against the City of New York. This assertion is without merit for the simple reason that it is premised on a characterization of the complaint that ignores the complaint's actual factual allegations, which of course must be accepted as true for purposes of the City's motion.

The legal standards governing a motion to dismiss are straightforward and not disputed. As the Supreme Court explained in *Ashcroft v. Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

129 S.Ct. 1937, 1949 (2009) (internal citations and quotations omitted). *Accord Jackson v. Rikers Island Facility*, 2011 WL 3370205, at *1 (S.D.N.Y. Aug. 2, 2011) (Berman, J.) (discussing standard). In light of this standard, the City's motion is without merit, as the facts in the complaint plainly provide a plausible basis for the plaintiffs' request for injunctive relief and for liability against the City under *Monell*.

A. The Complaint Alleges Facts Sufficient to Establish a Plausible Claim for Injunctive Relief.

The City first contends the plaintiffs lack standing to seek injunctive relief against the unlawful treatment of passengers under the TRIP program. *See* Memorandum of Law in Support

of Motion to Dismiss by City of New York and Raymond Kelly (Defendants' Memorandum) at 3-5 (Aug. 5, 2011).

As with the standards governing a motion to dismiss, the standards governing a plaintiff's standing to seek injunctive relief are not in dispute. As the Second Circuit has explained, "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004). As for the likelihood of future harm required for standing, the Court of Appeals has explained that there is no precise formula but that a plaintiff "must allege that he faces a direct risk of harm which rises above mere conjecture." *Baur v. Veneman*, 352 F.3d 625, 636 (2d Cir. 2005); *accord Amnesty International v. Clapper*, 638 F.3d 118, 137-38 (2d Cir. 2011) (discussing standards and reviewing cases). One factor the Second Circuit has singled out as buttressing standing for injunctive relief is when the alleged unlawful conduct is part of an official government program. *See Amnesty International*, 638 F.3d at 137 & n.20 (citing and discussing cases).

In its memorandum the City contends that the risk that the plaintiffs will be subjected to future unlawful treatment is "hypothetical, speculative and conjectural." Defendants' Memorandum at 5. In support of this contention, the City argues,

> As plaintiffs have each had only one alleged wrongful experience with NYPD officers under the TRIP program out of all the times they have taken livery cabs, they cannot establish the requisite likelihood that they will be injured in the future. The plaintiffs' assertions that they "continue[] to use livery cabs" and that they "fear [they will] have another similar encounter with the police" are merely hypothetical, speculative and conjectural bases for requesting injunctive relief at best."

Defendants' Memorandum at 4-5.

7

If the complaint only alleged that each plaintiff had had an unlawful encounter and feared

future unlawful encounters, that might well make the likelihood of future encounters

"hypothetical, speuculative, and conjectural" as the City suggests and therefore, under Second

Circuit precedent, might be insufficient to confer standing on them to seek injunctive relief. But,

of course, the complaint alleges much more:

* The encounters experienced by the plaintiffs were part of an official NYPD program --
  the TRIP program -- in which a large number of livery cars are enrolled. *See* First
  Amended Complaint ¶¶ 60-61.

* In each instance when the plaintiffs were detained, questioned and searched without
  suspicion pursuant to a TRIP stop, the officers stated that such treatment of passengers
  was standard practice under the TRIP program, and the officers pointed specifically at
  the TRIP decal on the car. *See id.* ¶¶ 27, 29, 49-50, 53.

* Consistent with the statements made by the officer about their routine nature of their
  actions, the plaintiffs had virtually identical experiences even though their encounters
  were nearly two months apart and involved different officers in very different parts of the
  City. *Compare id.* ¶¶ 14-29 (Battle) *with id.* ¶¶ 42-53 (Pujara).

* Consistent with the statements of the officers who stopped Mr. Battle and Mr. Pujara that
  their treatment was standard procedure under TRIP, livery drivers of vehicles enrolled in
  the program report that police officers detain, question, frisk, and search passengers, even
  after the drivers inform the officers that there is nothing wrong in the car. *See id.* ¶¶ 66.

* In addition to claiming that such treatment of passengers was routine, the officers who
  interacted with Mr. Pujara told him that NYPD officers would be doing TRIP stops more
  often. *See id.* ¶ 53.

* By virtue of the unavailability of yellow cabs in their neighborhoods, both Mr. Battle and
  Mr. Pujara have little choice but to rely on livery cabs and regularly do so but are anxious
  anytime they have to do so out of fear of another encounter. *See id.* ¶¶ 38, 13, 59, 41.
  Consistent with their fear of future encounters, both plaintiffs filed formal complaints
  with the New York City Civilian Complaint Review Board after their encounters. *See id.*
  ¶¶ 35, 57.

Recognizing that these allegations must be accepted as true and all reasonable inferences

drawn in the plaintiffs' favor, the City's motion to dismiss would have to argue that it would be

speculation or conjecture to believe the plaintiffs would experience a TRIP search given the

8

following circumstances: the TRIP program is an official NYPD program in which a large number of livery cabs are enrolled; police officers routinely detain, question, frisk, and search livery car passengers without any suspicion of wrongdoing on their part during TRIP stops; TRIP stops are increasing; and the plaintiffs are regular livery cab users, already have been subjected to unlawful TRIP encounters, and have little choice but to continue taking livery cars on a regular basis.

The City's motion, however, makes no such argument. To the contrary, it ignores the well-pled facts of the complaint and seeks dismissal entirely on the contention that the complaint alleges nothing more than two prior police incidents and a fear of future incidents. This approach cannot support a motion to dismiss, as it is flatly contravenes the well-established rules governing Rule 12(b)(6) motions. The Court should therefore deny the City's motion.

Moreover, it is no surprise the City fails to engage the actual facts of the complaint, as those facts support standing to seek injunctive relief. The likelihood that the plaintiffs will be subjected to a future TRIP stop in which they will be detained, questioned, and searched without suspicion plainly rises above the "mere conjecture," as specified by the Second Circuit in *Baur*. *See, e.g., Amnesty International*, 638 F.3d at 139 (citing *Baur* in holding that plaintiffs had standing to seek injunctive relief against wiretapping statute because their concerns about likelihood of future surveillance "are by no means based on 'mere conjecture,' delusional fantasy, or unfounded speculation"); *Roe v. City of New York*, 151 F. Supp.2d 495, 506 (S.D.N.Y. 2001) (rejecting City assertion in motion to dismiss that plaintiffs lacked standing to seek injunctive relief when plaintiffs alleged an NYPD practice of unlawful arrests and had been previously arrested pursuant to that practice); *cf. Bray v. City of New York*, 346 F. Supp. 2d 480 (S.D.N.Y. 2004) (in holding that plaintiffs could obtain preliminary injunction against alleged

9

NYPD practice of unlawfully confiscating bicycles, noting that "[w]here a defendant has previously engaged in a pattern of similar acts, there is a sufficient likelihood that it will do so again in the near future").

The City's claim of no standing is particularly inappropriate here because this case deals with an official NYPD program targeted specifically at activity in which the plaintiffs participate and because the plaintiffs are subject to unconstitutional treatment while engaging in wholly lawful activity -- riding as a passenger in a livery car. *See Amnesty International*, 638 F.3d at 137 & n.20 (discussing significance of official program for standing); *Roe*, 151 F. Supp. 2d at 503 (in holding that plaintiffs had standing to seek injunctive relief against NYPD arrest practice, reasoning that standing particularly appropriate because program was targeted at locations that plaintiffs frequented and noting that courts have found standing "where the plaintiffs have been subjected to police action for engaging in legal activity"); *National Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1999) (in holding that plaintiffs have standing to seek injunctive relief against practice of unlawful NYPD stops and frisks, reasoning that standing particularly appropriate because "plaintiffs do not have to break the law to be exposed to the alleged unconstitutional violations").

Under well-established law, the plaintiffs have standing to seek injunctive relief on the facts alleged in the complaint. Nothing in the defendants' motion establishes -- indeed, even suggests -- otherwise.

B. <u>The Complaint Alleges Facts Sufficient to Establish a Plausible Claim</u>
<u>for Declaratory Relief.</u>

The City next moves to have the Court dismiss the plaintiffs' claim for declaratory relief.

*See* Defendants' Memorandum at 5-7.  In doing so, its relies on the same assertion upon which

its bases its argument about standing to seek injunctive relief:  "The entirety of the dispute

between the plaintiffs and defendants arises out of past acts, the two stops that they allege were

wrongful in this case.  There is no present or ongoing controversy between the parties." *Id*. at 7.

The plaintiffs do not dispute the City's suggestion, *see* Defendants' Memorandum at 6-7,

that declaratory relief is not available in cases that seek only damages for past acts.  That

proposition, however, is besides the point here.  As noted in the prior section, the plaintiffs'

complaint alleges far more than just two prior acts and instead establishes an ongoing

controversy between the parties.  For the same reasons they have standing to seek injunctive

relief, the plaintiffs have standing to seek related declaratory relief.

C. <u>The Complaint Alleges Facts Sufficient to Establish a Plausible Claim</u>
<u>for Municipal Liability.</u>

Finally, the City in two places moves to dismiss the plaintiffs' claims for relief against

the City of New York.  *See* Defendants' Memorandum at 7-8 (discussing compensatory

damages); *see id*. at 5 (discussing injunctive relief).  Again, the City's motion is without merit in

that it fails to accept the facts as alleged in the complaint.

As with the injunctive and declaratory claims, there is no significant dispute between the

parties about the legal standards governing municipal liability.  Under *Monell v. City of New*

*York City Dep't of Social Services*, 436 U.S. 658 (1978), municipal liability for constitutional

11

violations cannot attach merely by virtue of *respondeat superior*. Rather, such liability requires a plaintiff to demonstrate the existence of an official policy or of a custom that caused the constitutional violation. *See id.* at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government entity is responsible under §1983."); *Okin v. Village of Cornwall-on-Hudson Police Department*, 577 F.3d 415, 439 (2d Cir. 2009) (discussing standard and reversing grant of summary judgment to defendants).

The plaintiffs here do not challenge a formal municipal policy (such as an ordinance) or a decision by a single policy maker, both of which present circumstances in which municipal liability attaches. Rather, they challenge a widespread practice -- the suspicionless detention, questioning, and searching of livery passengers under the TRIP program -- that rises to a custom, and challenge the City's failure to train police officers who conduct TRIP stops. *See* Complaint ¶¶ 1, 4, 64, 68.

With respect to the custom claim, it is well-established that a municipality can be liable under section 1983 in situations in which lower-level employees engage in a widespread practice that violates constitutional rights. As the Supreme Court has explained, "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bryan County Commissioners v. Brown*, 520 U.S. 397, 404 (1997). *Accord LaRue v. New York City Off-Track Betting Corp.*, 2004 WL 2793195, at *5 (S.D.N.Y. Dec. 6, 2004) (Berman, J.) (noting standard); *Okin*, 577 F.3d at 439 (discussing basics of custom claim). Similarly, as the Second Circuit has noted, the Supreme Court has held that "a municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies

12

without more training." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004); *see also Okin*, 577 F.3d at 440 (discussing standards governing failure-to-train claims).

In moving to dismiss the plaintiffs' municipal liability claims, the City essentially offers the same contention as it does with respect to standing:

> In this case, plaintiffs can only point to two isolated incidents of alleged misconduct in connection with the TRIP program in the entire City of New York. Beyond that, plaintiffs are unable to provide any factual support for their municipal liability theory.

Defendants' Memorandum at 8.

Again, this just ignores the complaint, which in fact alleges TRIP is an official NYPD program in which a large number of livery cabs are enrolled and that it is standard practice for police officers conducting TRIP stops to detain, question, frisk, and search livery car passengers without any suspicion of wrongdoing on their part. Further supporting the allegation of the routine nature of improper treatment of passengers under TRIP is the fact that the two plaintiffs had largely identical experiences when stopped by different sets of officers in very different parts of the City. These facts, which must be accepted as true, plainly are sufficient to allege a widespread practice -- indeed, a uniform practice -- sufficient to defeat a motion to dismiss. *See, e.g.*, *Colon-Rodriguez v. New York City Dept. of Correction*, 2009 WL 995181, at *6-8 (S.D.N.Y. Apr. 13, 2009) (denying motion to dismiss when plaintiff identified a plausible "basic link" between the constitutional violation and municipal practice); *Saenz v. Lucas*, 2008 WL 2735867, at *5 (S.D.N.Y. July 9, 2008) (denying motion to dismiss when plaintiff's pleading gave defendant fair notice of a custom or policy that would establish municipal liability); *Cortlandt v. Westchester County*, 2007 WL 3238674, at *8-9 (S.D.N.Y. Oct. 31, 2007) (denying motion to dismiss because combination of factual allegations regarding municipal

policy and personal example is sufficient to satisfy pleading standard); *Cooper v. Metropolitan Transp. Authority*, 2006 WL 1975936, at *3 (S.D.N.Y. July 14, 2006) (denying motion to dismiss because plaintiff made minimal factual allegations that could plausibly support liability).[2] And the City's motion, because it fails to acknowledge these facts, does not suggest otherwise.

As for the failure-to-train claim, the City's motion does not even address it. The complaint, however, is explicit on this point:

> As evidenced by the statements and actions of the officers the plaintiffs encountered and by the reports of livery cab drivers and others, the NYPD has failed to adequately train and supervise officers conducting stops under the TRIP program to ensure that they are not violating the constitutional rights of passengers for whom no independent suspicion exists. The NYPD Patrol Guide, which contains policies and procedures for NYPD officers, contains no guidelines governing the actions of officers conducting stops under TRIP.

First Amended Complaint ¶ 68. Though a plaintiff bears a substantial burden in ultimately prevailing on a failure-to-train claim,[3] at the pleading stage a plaintiff need only allege a failure to train to survive a motion to dismiss. *See Amnesty America*, 361 F.3d at 130 n.10 ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead the city's failure to train caused the constitutional violation."). The plaintiffs' complaint alleges such a failure and

---

[2] By contrast, allegations of this sort are insufficient to survive a motion for summary judgment. *See Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d. 501, 514 (S.D.N.Y. 2008) (granting partial summary judgment because plaintiff only made conclusory statements regarding alleged practice and offered no evidentiary support); *Kalu v. City of New York*, 2008 WL 4344592, at *6-8 (S.D.N.Y. Sept. 16, 2008) (same).

[3] *See, e.,g., Okin*, 577 F.3d at 440 (discussing required proof in reversing grant of summary judgment to defendants).

goes even further by specifically asserting that the NYPD's official policy guide contains no directions for how NYPD officers should conduct TRIP stops.

Next (though earlier in its memo), the City contends the plaintiffs lack standing to seek injunctive relief against the City because the complaint does not allege the "existence of an official policy or its equivalent," only alleges "isolated incidents," and fails to provide any factual support "for their bald allegation that the NYPD has a policy of wrongfully searching passengers in implementing the TRIP program." Defendants' Memorandum at 5. As noted above, this approach simply ignores the complaint's allegations, including the statements by officers at both stops that such treatment of passengers is standard practice under TRIP.

Finally, in its discussion about municipal liability and injunctive relief, the City cites the New York Court of Appeals case *People v. Abad*, 98 N.Y.2d 12 (2002), for the proposition that the "TRIP program is constitutional." Defendants' Memorandum at 5. *Abad*, however, dealt with the constitutionality of the stops of vehicles enrolled in the TRIP program, *see* 98 N.Y.2d at 14, something the plaintiffs do not challenge, *see* First Amended Complaint ¶ 3. Nothing in *Abad* remotely suggests that the suspicionless detention, questioning, searching of passengers that is at issue here is constitutional (and, indeed, the City itself does not suggest such treatment is lawful). The *Abad* decision provides no support to the City's motion to dismiss.

## II. THE COURT SHOULD DENY THE MOTION TO INTERVENE BECAUSE THE FEDERATION DOES NOT MEET THE REQUIREMENTS FOR INTERVENTION.

The Court should also deny the motion to intervene filed by the Federation because the organization fails to meet the requirements for intervention. The Federation seeks to intervene based on its interest in the City's continued discretionary commitment of policing resources to

15

the TRIP program in general, even though the program itself is not at issue in this case and the defendants have given every indication that they will defend their actions related to the program.

The Federation's only relation to this case is that it represents some drivers who claim to have personal knowledge of stops under the TRIP program. However, the Federation's interests can be fully advanced through the drivers' participation as fact witnesses, the organization as *amicus curiae*, and the defendants as advocates of the same ultimate objectives. *See British Airways Bd. v. Port Authority of New York and New Jersey*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976) (denying intervention but permitting movants to submit briefs as *amici curiae* because that was most effective and expeditious way for them to participate). Intervention is inappropriate, and would needlessly complicate and delay the fair and efficient resolution of the case.

The Federation is an organization purporting to represent the interests of some drivers of livery cabs, which states that it was created in part to organize an effective response to crime and violence in the neighborhoods in which its drivers operate.[4] Defendants' Memorandum at 10. Of its 20,000 member drivers, the Federation asserts, between ten and twenty percent participate in the TRIP program. *Id.* By displaying a TRIP decal on their windows, the drivers "consent[] to being pulled over by the N.Y.P.D., who simply check on the respective drivers to ensure their safety in an effort to detect and deter criminality." *Id.* at 11. The Federation asserts that "[t]he importance of the TRIP program cannot be overstated," and credits the program with preventing taxi drivers from being the victims of violent crimes. *Id.* Based on this desire to see the TRIP program continue, the Federation moves to intervene as a party in this case.

---

[4] The Federation has not submitted a "pleading that sets out the claim or defense for which intervention is sought," thus failing to comply with Rule 24(c) or to put the plaintiffs on notice of the grounds on which the Federation seeks to intervene. Nor has it submitted any other evidence to support its factual assertions. Even assuming the factual statements to be true, however, the Federation has clearly failed to meet the requirements for intervention.

A. <u>The Court Should Deny the Motion for Intervention As of Right</u>.

The Federation first seeks to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure. *See* Defendants' Memorandum at 12-15. The Federation, however, falls far short of meeting the well-established requirements for intervention as of right under Rule 24.

The rule governing intervention seeks to "accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994). Thus, to intervene as of right under Rule 24(a)(2), a party must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *R Best Produce, Inc. v. Shulman-Rabin Marketing Corp.*, 467 F.3d 238, 241 (2d Cir. 2006). "Failure to satisfy *any one* of these [four] requirements is a sufficient ground to deny the application." *Id.* (emphasis in original) (citation omitted).

The Federation fails to meet the second, third, or fourth requirements, and intervention would serve no purpose beyond needlessly delaying the fair and efficient resolution of the case. Accordingly, the Court should deny the motion.

1. The Federation lacks a direct, legally protectable interest.

First, the Federation has no "interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). "The word 'interest' as it is used in Rule 24(a) has been construed very narrowly." *Chevron Corp. v. Donziger*, 2011 WL 2150450, at *2 (S.D.N.Y. May 31, 2011). "[F]or an interest to be cognizable under Rule 24(a)(2), it must be direct, substantial, and legally protectable." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129

17

(2d Cir. 2001) (citation omitted). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (citation omitted); *see also Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782 F. Supp. 870, 874 (S.D.N.Y. 1991) ("Under Rule 24(a), the 'interest' of the intervenor-applicant must be significantly protectable such that it will be directly and immediately affected by the litigation.").

The Federation has no direct or legally protectable interest in the subject matter of this case, so it fails to meet this requirement. The only interest the Federation claims in this case is that its members are allegedly safer as a result of the NYPD's discretionary use of resources in the TRIP program. The Federation contends that, if the plaintiffs prevail in their claim of a pattern or practice of unlawful searches related to the TRIP program, it "could lead to the gutting of the Program or its outright dismantling," which could in turn lead to an increase in crimes against cab drivers. Defendants' Memorandum at 13; *see also id.* at 11 ("the [Federation fears] that the Plaintiff[s'] lawsuit will have a chilling [e]ffect upon aggressive yet lawful police enforcement").

However, this argument is premised on a fundamental misunderstanding of the plaintiffs' claims. The plaintiffs do not challenge the lawfulness of the TRIP program itself, but only the unlawful search and seizure of passengers. The Federation nowhere contends that it has an interest in officers removing passengers from cabs and searching them. Indeed, while the TRIP program authorizes officers to stop and visually inspect livery cabs, NYPD policy acknowledges that passengers may not be removed from vehicles absent independent factors causing the officers conducting the stop to fear for their safety. First Amended Complaint ¶ 63. To the

extent the program seeks to improve drivers' safety, it is through means other than searching the passengers—for example, by giving drivers the opportunity during a stop to express concern about their safety to the officers.

Because the Federation's only claimed interest is in aspects of the TRIP program that the plaintiffs do not challenge, that interest is indirect. *See Rodriguez v. Pataki*, 211 F.R.D. 215, 218 (S.D.N.Y. 2002) (three-judge court) (Berman, Walker, and Koetl, JJ.) (denying intervention because movant only had interest in related issues, not direct interest in instant case). The Federation does not face the risk that it or its members will be directly affected by a court order in favor of the plaintiffs; it only faces the possibility that the NYPD could voluntarily alter or disband the entire TRIP program as a result of an adverse ruling on the challenged overreach of the program at issue in this case. Thus, its interest is "contingent upon the occurrence of a sequence of events" rather than direct. *Peoples Benefit Life Ins. Co.*, 271 F.3d at 415. The Second Circuit has held that an indirect benefit or harm to a party from the outcome of a suit is insufficient to satisfy this prong. *See Crown Financial Corp. v. Winthrop Lawrence Corp.*, 531 F.2d 76, 77 (2d Cir. 1976) (finding no interest in underlying action where movant had purchased land with a lien upon it, and sought to intervene in the suit giving rise to the lien); *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 872-76 (2d Cir. 1984) (finding no interest in underlying breach of contract suit where insurance company sought to intervene to determine what portion of damages it would owe if defendant was held liable); *see also Chevron Corp.*, 2011 WL 2150450, at *2-3 (S.D.N.Y. May 31, 2011) (finding no interest where lawyer sought contingency fees recoverable if his client prevailed).

In this case it is far from clear that the Federation would even be benefitted or harmed *indirectly* by the disposition this case.[5] Moreover, even if the Federation had some direct interest, it has not shown how it has any *legally protectable* interest. Neither the Federation nor its members have a right to the NYPD continuing to focus resources on the TRIP program, and the Federation has not identified any other way that its interest could possibly be considered legally protectable. Accordingly, it has failed to meet the second prong of Rule 24(a)(2).

     2. The Federation's ability to protect its interest will not be impaired
by the disposition of this action.

Similarly, due to the indirect nature of its interest in the case, the resolution of the plaintiffs' claims will not impair the Federation's ability to protect that interest. To meet this prong, a potential intervenor must demonstrate "that it is so situated that *without intervention* the disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest." *MasterCard Intern. Inc. v. Visa Intern. Service Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (emphasis in original). Where the movant's interest "will not be impaired or impeded *because* it is denied intervention in th[e] case," this prong is not met. *Id.* (emphasis in original).[6]

_____

[5]In support of its argument, the Federation cites *Warth v. Seldin*, 422 U.S. 490, 508 (1975). Defendants' Memorandum at 13. However, the Federation does not explain how *Warth* supports its claims—nor could it, as *Warth* concerned standing rather than intervention, and the Court held that the parties did *not* have sufficient injuries and so *lacked* standing. Likewise, the only other case the Federation cites regarding this issue held that, because the movants' interest was based on contingencies, it was not "direct or substantial," so this prong was not met. *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *see also Restor-A-Dent*, 725 F.2d at 875-76 (affirming denial of intervention because claimed interest was based on contingencies).

[6]The Federation cites *Nuesse v. Camp*, 385 F.2d 694, 700-01 (D.C. Cir. 1967) for the proposition that the 1966 amendment to Rule 24 (which is still operative today) does not require a "substantial" impairment of the movant's interest. Defendants' Memorandum at 14. The
(continued...)

With respect to this prong, the Federation again argues that it has met its burden based on its interest in the smooth functioning of the TRIP program administered by the NYPD. Defendants' Memorandum at 14. But as discussed above, the Federation's claimed interest is not in the challenged misconduct in searching and detaining passengers, but in the program itself, which is not at issue in this case. Whether before or after the disposition of this suit, the decision to continue or alter the TRIP program lies with the City, not the Court. Regardless of how this suit is resolved, the Federation may continue to advocate to the City that it continue the TRIP program, and the City may choose to accept or reject that suggestion. The continuance of the TRIP program depends on the City's policy choices rather than on the Court's ruling, so the disposition of this case will not impair the Federation's ability to protect its interests. *See MasterCard Intern.*, 471 F.3d at 390 (affirming denial of intervention because if ability to protect interest was harmed it would be due to breach of contract, not because it was denied intervention); *Louis Berger Group, Inc. v. State Bank of India*, --- F. Supp. 2d ----, 2011 WL 3585504, at *3 (S.D.N.Y. Aug. 9, 2011) (finding no impairment because movant could protect interest in another forum); *Union Switch & Signal, Inc. v. St. Paul Fire and Marine Ins. Co.*, 226 F.R.D. 485, 488-89 (S.D.N.Y. 2005) (same). Accordingly, the Federation cannot meet this prong.

---

(...continued)
plaintiffs agree with that statement of the legal standard. However, the Federation does not suggest that the holding in *Nuesse* supports its argument, beyond the conclusory assertion that "[t]his threshold is easily met here." *Id. Nuesse* merely held that a state regulatory commissioner's direct interest in the issue being litigated could be impaired even though the commissioner would not be precluded by *res judicata* from relitigating the question. 385 F.2d at 702; *see id.* at 701 (noting that commissioner "would probably not have been entitled to intervene" under pre-1966 rule). Accordingly, it has no bearing on the instant motion.

3. The current defendants will fully represent the Federation's interests.

Beyond the fact that the Federation has no direct interest in this case, the City and the individual defendants will fully and adequately represent the interests that Federation does have, without the Federation's intervention. Although a proposed intervenor's burden to show lack of adequate representation is "generally speaking minimal," there is a "presumption of adequate representation" when the movant and an existing party have "the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001); *see also Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 346352, at *3 (S.D.N.Y. June 25, 1996) (*"*So long as the representative party will vigorously litigate, a difference in motive does not preclude adequate representation.") (denying intervention by union because, although motives differed, company shared interest in maintaining contract with another company). A proposed intervenor can overcome that presumption "only by providing evidence of, for example, 'collusion, adversity of interest, nonfeasance, or incompetence.'" *Chevron Corp.*, 2011 WL 2150450, at *4 (quoting *Butler, Fitzgerald & Potter*, 250 F.3d at 180).

In this case the City and the Federation have the same objectives: to defend the TRIP program and to ensure the safety of livery cab drivers. Nowhere does the Federation contend that the defendants have failed to advance any appropriate legal argument or adopted a different litigation strategy than that Federation would pursue. To the contrary, the City has shown no hesitance in defending its actions, and the Federation has provided no reason to doubt that the City will continue to zealously defend the suit. *See British Airways Bd.*, 71 F.R.D. at 584-85 (denying intervention because Port Authority would adequately represent community group's interest in maintaining Port Authority's power to prohibit supersonic jets from airport); *Butler,*

22

*Fitzgerald & Potter*, 250 F.3d at 179-81 (2d Cir. 2001) (affirming denial of intervention by law firm because former client shared ultimate objective of recovering money, which could then lead to payment of delinquent attorney's fees).

The only explanation the Federation suggests as to why it must intervene to protect its interests is that it can "provide evidence and information as to the Program's vitality of its success" in order to counter the plaintiffs' "misguided assertions as to the practice and pattern of police misconduct." Defendants' Memorandum at 14. The Federation further asserts, "To the extent that the [Federation is] in the best position to know how the TRIP program is administered and to assess and otherwise provide factual details regarding the N.Y.P.D.'s behavior and comportment, [it] should most certainly take part in this action." *Id.* at 15.[7] The desire of the Federation or its members to "provide evidence" and "factual details" is more appropriately done in the capacity as witnesses with personal knowledge of the events. The current defendants may designate Federation drivers as witnesses if they have knowledge relevant to the case, and so the Federation's ability to present information contradictory to the plaintiffs' account is not contingent on its intervention.[8] The Federation's interests will be fully represented without intervention, so it fails to meet the final prong for intervention of right.

---

[7] As an initial matter, it is illogical to suggest that the Federation is in a better position to "know how the program is administered" than the NYPD is. The Federation does not purport to represent all, or even a majority, of drivers who participate in the TRIP program, and so, at most, its members have personal knowledge of only a subset of TRIP stops. By contrast, the NYPD is necessarily involved in every stop under the TRIP program, in addition to making policy and evaluating the effectiveness of the program.

[8] The plaintiffs dispute the relevance of testimony regarding the general effectiveness of the TRIP program, because, as discussed above, they only challenge the searches and seizures of passengers, not the program as a whole.

## B. The Court Should Deny Permissive Intervention.

Alternatively, the Federation seeks permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure. *See* Defendants' Memorandum at 16. The Court should also deny this motion. Rule 24(b) gives the district court discretion to grant intervention if a movant "has a claim or defense that shares with the main action a common question of law or fact." In considering permissive intervention, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see U.S. Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) ("The principal consideration set forth in the Rule is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'").

The Federation has no claim or defense, only an indirect interest in the NYPD continuing to deploy resources in the TRIP program (which is not even at issue in this suit). The only possible direct relation that the Federation has to this case is that some of its members claim to have personal knowledge of the TRIP program, and thus could potentially serve as fact witnesses. Because the drivers can testify as to any relevant knowledge, and the Federation can participate as *amicus curiae*, intervention has no conceivable benefit to the fair and efficient resolution of the issues.

The only effect intervention will have on the case is needless delay. If permitted to intervene, the Federation "might well be tempted to focus [its] attention on" the issues of greatest concern to them, "as opposed to the narrow legal questions placed in issue by the pleadings in this action." *British Airways Bd.*, 71 F.R.D. at 585 (denying permissive intervention). The Federation's participation could lead to additional discovery, motions, and

even appeals unnecessary to decide the controversy between the plaintiffs and the existing

defendants and could complicate settlement efforts, thereby consuming time and resources. *See*

*id.* at 585 (noting that "[a]dditional parties always take additional time" because they "are the

source of additional questions, objections, briefs, arguments, motions and the like which tend to

make the proceeding a Donnybrook Fair"). The potential for delay counsels against

intervention. *See, e.g., Rodriguez*, 211 F.R.D. at 219 (denying permissive intervention because it

"would only serve to unduly delay the expedient disposition of this case") (citation omitted).

Accordingly, permissive intervention should be denied.


CONCLUSION


For all the foregoing reasons, the plaintiffs respectfully submit that the Court should deny

the City's partial motion to dismiss the complaint and should deny the New York State Taxi

Federation's motion to intervene. The plaintiffs have no objection to the proposed the Taxi

Federation participating as *amicus curiae* in this matter.


Respectfully submitted,

CHRISTOPHER DUNN (CD-3991)
ARTHUR EISENBERG (AE-2012)
DANIEL MULLKOFF
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300

On the brief: Brian Richichi
           Vadim Glukhovsky       Counsel for the Plaintiffs

Dated: September 9, 2011
       New York, N.Y.