UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

TERRENCE BATTLE, et. al.,

                              Plaintiffs,

           -against-

THE CITY OF NEW YORK, et. al.,

                            Defendants.

-------------------------------------------------------------------

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS BY CITY OF NEW YORK AND RAYMOND KELLY**

11 Civ. 3599 (RMB)(HBP)

## PRELIMINARY STATEMENT

        Defendants City of New York (the "City") and Raymond Kelly hereby respectfully submit their Memorandum of Law in Further Support of their Motion to Dismiss plaintiffs' First Amended Complaint against them pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. For the reasons set forth herein, as well as in those set forth in defendants' moving papers, plaintiffs have failed to state plausible claims against the City and Kelly upon which relief may be granted, thus, dismissal of their First Amended Complaint against these defendants with prejudice is required. The moving defendants respectfully submit that plaintiffs' attempt to expand this controversy beyond what is allowable by law must be rejected.

# ARGUMENT

## POINT I

## PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF MUST BE DISMISSED

Plaintiffs do not dispute the law cited by the moving defendants as set forth in their opening brief at p.4 thereof, namely that for plaintiffs to have standing to seek injunctive relief, they "cannot rely on past injury…but must show a likelihood that [they]…will be injured in the future" and that the "'[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural or 'hypothetical.'" Shain v. Ellison, 356 F.3d 211, 215-216 (2d Cir. 2004)("Shain II"). Plaintiffs do, however, take issue with defendants' application of this standard as it relates to this dispute.

In their opening brief, the moving defendants argued that plaintiffs have only been able to point to one incident each where they could even allege that NYPD officers improperly stopped, questioned and/or frisked passengers during stops under the unquestionably constitutional TRIP program. The moving defendants further argued that plaintiffs' reference to two past, isolated and random incidents where said alleged wrongful acts occurred in a city the size of New York, does not establish standing to seek injunctive relief.

In response, plaintiffs do not argue that they can point to any other incidents beyond the two isolated and random incidents that they reference in their amended complaint. They also admit that if their complaint had "only alleged that each plaintiff had had an unlawful encounter and feared future encounters, that might well make the likelihood of future encounters 'hypothetical, speculative, and conjectural' as the City suggests and therefore, under Second Circuit precedent, might be insufficient to confer standing on them to seek injunctive relief." (Plaintiffs' Memorandum of Law at p. 8). Principally, plaintiffs contend (at p. 8 of their

Memorandum of Law) that what separates them from other plaintiffs making allegations of police misconduct is that "the encounters experienced by plaintiffs were part of <u>an official NYPD program</u>—the TRIP program—in which a large number of livery cabs are enrolled." (Amended Complaint, ¶¶60-61, emphasis added).

Plaintiffs then argue that because the stops of which they complain were part of an official NYPD program, they have therefore met the aforesaid standing requirements. However, a close analysis of plaintiffs' argument demonstrates the fallacy thereof. The TRIP program is unquestionably constitutional, <u>People v. Abad</u>, 98 N.Y.2d 12 (2002), and plaintiffs concede that they are not challenging it. Most importantly, as it relates to the instant motion, plaintiffs do not even allege a formal program of the NYPD to stop question, question and/or frisk passengers during TRIP stops, but rather contend that there is such a "widespread" custom or practice that such has the "force of law." <u>Bryan County Commissioners v. Brown</u>, 520 U.S. 397, 404 (1997). That plaintiffs are not even alleging that the NYPD has a formal policy of engaging in the conduct alleged in this case or allege facts that the NYPD ratifies such alleged conduct, but rather can only point to two isolated and random incidents in the entire City of New York over a period of time as evidence of a "widespread custom or practice," easily separates this case from the case that plaintiffs principally rely on, <u>Amnesty International v. Clapper</u>, 638 F.3d 118 (2d Cir. 2011), wherein an official statute was challenged.

As seen, plaintiffs can only point to two isolated and random incidents of the type alleged in the complaint in the entire City of New York over a period of time. Plaintiffs cannot cite to any case law which supports the notion that alleging two isolated and random incidents such as they have done here provides standing for injunctive relief.

For these plaintiffs to suffer future harm, they would have to 1) again hire a livery taxi; 2) the livery cab would have to be stopped by the NYPD pursuant to the TRIP program such that plaintiff again comes in contact with the police; and 3) that the plaintiff be improperly stopped, questioned and/or frisked, something that plaintiffs do not even contend is NYPD policy or has been ratified by the NYPD in any way. This case is very similar to the seminal case in this regard, City of Los Angeles v. Lyons, 461 U.S. 95 (1983). In that case, the plaintiff alleged that he feared being subjected to an illegal chokehold, and given the extensive use of chokeholds by the Los Angeles police, that he should be afforded standing to seek injunctive relief. However, the United States Supreme Court held that the risk that plaintiff himself would come into contact with the police and suffer a subsequent unlawful chokehold was speculative in nature and insufficient to confer equitable standing. Id., at 109; see also MacIsaac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 601 (S.D.N.Y. 2011)(Plaintiff's claim that he would be stopped, arrested and subjected to a taser gun again was speculative, and injunctive relief therefore denied despite claim of municipal liability). The allegations made by plaintiffs in this case are similarly nothing more than pure "speculation" and "conjecture" and essentially tacitly makes the similar "unbelievable" allegation that was made in Lyons, 461 U.S. at 106, n.7, namely that the NYPD authorizes unconstitutional stops, questioning and/or frisks in connection with TRIP stops.

As the Court is aware, the moving defendants contend that plaintiffs have not even stated a plausible municipal liability claim for relief against them such that a claim for monetary relief lies, for plaintiffs have failed to establish a "pattern" of misconduct. See Defendants' Memorandum of Law at p. 8. However, should the Court find that said claim for monetary relief survives, there can be little doubt that the standing requirement for injunctive

relief requires something much more, namely a likelihood of future injury, MacIsaac v. Town of Poughkeepsie, 770 F. Supp. 2d at 601, something plaintiffs have not remotely demonstrated by merely pointing to two isolated and random incidents of alleged misconduct in the entire City of New York.

**POINT II**

**PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY RELIEF**

The moving defendants set forth the applicable law with respect to the circumstances under which a party may seek declaratory relief at pp. 6-7 of their moving Memorandum of Law. The applicable law mandates that plaintiffs' claims for declaratory relief be dismissed as there is no "actual controversy between the parties," as required for declaratory relief to lie. In re REFCO Inc. Securities Litig.: Krys v. Aaron, No. 07-md-1902 (JSR), No. 08-cv-7416 (JSR), 2010 U.S. Dist. LEXIS 142588, at *41 (S.D.N.Y. July 19, 2010) (citing United States v. Doherty, 786 F.2d 491, 498-99 (2d Cir. 1986)). To warrant declaratory relief, "[t]here must be a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp., 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

The law is that past acts do not constitute an appropriate basis for invoking declaratory relief. Chiste v. Travelocity.com, LP, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) ("There is no basis for declaratory relief where only past acts are involved.") (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc., 2003 U.S. Dist. LEXIS 9193, at *15 (S.D.N.Y. June 2, 2003)); Gianni Sport Ltd. v. Metallica, No. 00 Civ. 0937 (MBM), 2000 U.S. Dist. LEXIS 17339, at *11 (S.D.N.Y. Dec. 4, 2000) ("Any damages that are due have already

accrued. Therefore, Gianni will not 'avoid the accrual of avoidable damages by means of this action.'"); 12 Moore's Federal Practice § 57.04(3) (3rd Ed. 2004) ("[d]eclaratory relief is inappropriate to adjudicate past conduct, such as when the damages have already accrued").

Plaintiffs do not take issue with the applicable law cited by the moving defendants, and cite none of their own, but rather contend that the amended complaint alleges an "ongoing controversy between the parties." No authority is cited for that proposition either.

Simply, the amended complaint makes reference to one past incident of each plaintiff with the NYPD, wherein there was a controversy which is the subject of this litigation. The events surrounding each of the incidents referenced in the amended complaint are over and plaintiffs may, and have, sued for monetary damages arising therefrom. There is no present controversy between the parties and the entire dispute arises from past events. As such, declaratory relief clearly does not lie. Although plaintiffs baldly assert that "for the same reasons they have standing to seek injunctive relief, [they] have standing to seek related declaratory relief…," the standards do differ, as the law cited by the moving defendants in both of their briefs makes clear. Plaintiffs have made no showing that they are entitled to declaratory relief and said claims must be dismissed as well.

## POINT III

## PLAINTIFFS' CLAIMS FOR MUNICIPAL LIABILITY MUST BE DISMISSED

In response to the moving defendants' Memorandum of Law, plaintiffs now argue that they wish to proceed on two municipal liability theories. Plaintiffs first contend that they wish to prove an unconstitutional and "widespread practice or custom" of the NYPD under Bryan County Commissioners v. Brown, 520 U.S. 397, 404 (1997). Second, plaintiffs wish to

proceed on a "failure to train" theory. However, plaintiffs fall woefully short of surviving defendants' motion to dismiss on either theory.

With respect to plaintiffs' first theory, plaintiffs must prove a "pattern" of misconduct that is "<u>sufficiently persistent or widespread</u> so as to acquire the force of law," <u>Reynolds v. Guiliani</u>, 586 F.3d 183, 192 (2d. Cir. 2007) (emphasis added), and which has violated the civil rights of persons "repeatedly." <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991); see also <u>Giaccio v. City of New York</u>, No. 07-3957-cv, 2009 U.S. App. LEXIS 1236, at *3 (2d Cir. Jan. 23, 2009) ("[Plaintiff] identifies, at most, only four examples [of conduct]. This evidence falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability."); <u>Green v. City of New York,</u> 465 F.3d 65, 80 (2d Cir. 2006)(quoting <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 226 (2d Cir. 2004)) ("a Section 1983 action may be maintained based on a practice that was 'so persistent or widespread' as to constitute 'a custom or usage with the force of law"); <u>Gentile v. Nulty</u>, No. 05 Civ. 7090 (NRB), 2011 U.S. Dist. LEXIS 20537, at *31 (S.D.N.Y. Feb. 25, 2011) (citing <u>Giaccio</u> and finding that two examples of similar conduct were insufficient to show a "persistent and widespread" pattern as required for municipal liability to lie).

Plaintiffs do not refute said law as cited by the moving defendants. Despite plaintiffs' spin on the allegations in the amended complaint, plaintiffs can only cite to two isolated and random incidents in the entire City of New York over a period of time. The moving defendants respectfully submit that when the foregoing law is applied to plaintiffs' allegations, plaintiffs' have failed to provide the factual support necessary to survive their conclusory allegation of a "widespread practice" under the exacting standard of <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2008).

Likewise, with respect to plaintiffs' failure to train theory of municipal liability, plaintiffs ignore the United States Supreme Court's most recent pronouncement in <u>Connick v. Thompson,</u> 131 S. Ct. 1350, 1359 (2011). The <u>Connick</u> court stated that in order to prove liability for a failure to train, plaintiff must demonstrate a "pattern of similar constitutional violations" by employees sufficient to place policymakers on notice "that a course of training is deficient in a particular respect." <u>Connick v. Thompson,</u> 131 S. Ct. 1350, 1360 (2011). The moving defendants respectfully submit that the two isolated incidents of alleged misconduct fall woefully short of surviving the applicable standards of <u>Ashcroft,</u> as set forth in defendants' moving Memorandum of Law and herein.

## CONCLUSION

For the foregoing reasons and those set forth in defendants' moving papers, plaintiffs attempts to expand this litigation beyond what is allowable by law must be rejected and plaintiffs' amended complaint against the City and Kelly dismissed.

Dated: New York, New York
September 22, 2011

> MICHAEL A. CARDOZO
> Corporation Counsel of the
>   City of New York
> Attorney for Defendant City of New York and
> Raymond Kelly
> 100 Church Street, Room 3-211
> New York, New York 10007
> (212) 442-8248
>
> By: _____/s/_____
>   MARK D. ZUCKERMAN