

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/14/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x

TERRENCE BATTLE and MUNIR PUJARA,

                               Plaintiffs,

                    -against-

THE CITY OF NEW YORK; RAYMOND W.
KELLY, Commissioner of the New York City
Police Department; WENDELYN COSTANZA, PHILIP
FACENDA, MICHAEL MILLER,
TOMAS REYES, and JEFF TORREDA, members
of the New York City Police Department,

                               Defendants.

----------------------------------------------------------------- x

**STIPULATION AND ORDER
OF SETTLEMENT AND
DISMISSAL**

11 Civ. 3599 (RMB)(HBP)

RECEIVED
MAY 14 2012
CHAMBERS OF
RICHARD M. BERMAN
U.S.D.J.

        **WHEREAS,** plaintiffs commenced this action by filing a complaint on or about May 26, 2011, and an amended complaint on July 21, 2011, alleging that defendants violated plaintiff's federal civil rights; and

        **WHEREAS,** defendants have denied any and all liability arising out of plaintiffs' allegations; and

        **WHEREAS,** the parties now desire to resolve the issues raised in this litigation, without further proceedings and without admitting any fault or liability; and

        **WHEREAS,** plaintiffs have authorized their counsel to agree to the terms set forth below;

        **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned, as follows:

        1.     The above-referenced action is hereby dismissed against defendants, with prejudice, and without costs, expenses, or fees in excess of the amounts specified in paragraphs 2, 3 and 7 below.

2. Defendant City of New York hereby agrees to pay plaintiff Terrence Battle Ten Thousand ($10,000.00) Dollars, the relief set forth in paragraphs 4, 5 and 6 herein, plus the portion of the total attorneys' fees, costs and expenses set forth in paragraph 7 below, in full satisfaction of all claims, including claims for costs, expenses and attorneys' fees. In consideration for the payment of this sum, plaintiff agrees to dismissal of all the claims against defendants and to release the defendants and any present or former employees and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action alleging a violation of plaintiff's civil rights from the beginning of the world to the date of the General Release, including claims for costs, expenses and attorneys' fees.

3. Defendant City of New York hereby agrees to pay plaintiff Munir Pujara Ten Thousand ($10,000.00) Dollars, the relief set forth in paragraphs 4, 5 and 6 herein, plus the portion of the total attorneys' fees, costs and expenses set forth in paragraph 7 below, in full satisfaction of all claims, including claims for costs, expenses and attorneys' fees. In consideration for the payment of this sum, plaintiff agrees to dismissal of all the claims against defendants and to release the defendants and any present or former employees and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action alleging a violation of plaintiff's civil rights from the beginning of the world to the date of the General Release, including claims for costs, expenses and attorneys' fees.

4. The defendant City represents that an NYPD FINEST message in the form annexed hereto as Appendix A has been read at 10 consecutive roll calls in all NYPD commands following the standard procedure for communication of FINEST messages. For those officers who do not participate in roll calls, the FINEST message has been conveyed to said officers in the manner that such officers customarily receive such messages. The NYPD will repeat the actions specified in this paragraph 6 months and then again 12 months after the date of entry of this Stipulation and Order. Upon each subsequent reading, defendant City will notify plaintiffs' counsel in writing that the reading has occurred and provide a copy of the FINEST message to plaintiffs' counsel.

5. The defendant City represents that an NYPD Operations Order in the form annexed hereto as Appendix B has been issued in the standard procedure for issuance of such operations orders.

6. The training memorandum in the form annexed hereto as Appendix C will become a part of the NYPD Police Student's Guide, to which recruits in the NYPD Police Academy may be tested as part of their regular training. Defendant City represents that this has occurred.

7. Defendant City of New York hereby agrees to pay plaintiffs the total sum of Thirty Seven Thousand Five Hundred ($37,500) Dollars in full satisfaction of any costs, expenses and attorneys' fees. Plaintiffs have assigned their rights to attorneys' fees, costs and expenses to their attorneys, the New York Civil Liberties Union. As such, said check will be made payable to plaintiffs' attorneys, the New York Civil Liberties Union.

8. Plaintiffs shall each execute and deliver to defendants' attorney all documents necessary to effect this settlement, including, without limitation, a General Release based on the terms of paragraphs 2 through 7 above and an Affidavit of Status of Liens. If Medicare has provided payment and/or benefits for any injury or condition that is the subject of this lawsuit, prior to tendering the requisite documents to effect this settlement, plaintiff shall have notified Medicare and shall submit with the settlement documents a Medicare final demand letter for conditional payments. A Medicare Set-Aside Trust may also be required if future anticipated medical costs are found to be necessary pursuant to 42 U.S.C. §1395y(b) and 42 C.F.R. §§411.22 through 411.26.

9. Nothing contained herein shall be deemed to be an admission by the defendants that they have in any manner or way violated plaintiff's rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, or the City of New York or any other rules, regulations or bylaws of any department or subdivision of the City of New York. This stipulation shall not be admissible in, nor is it related to, any other litigation or settlement negotiations.

10. Nothing contained herein shall be deemed to constitute a policy or practice of the City of New York or any agency thereof.

11. Plaintiffs agree to hold harmless the City of New York and the individual defendants regarding any liens or past and/or future Medicare payments, presently known or unknown in connection with this matter. If conditional and/or future anticipated Medicare payments have not been satisfied, the City reserves the right to issue a multiparty settlement check, naming Medicare as a payee or to issue a check to Medicare directly based upon Medicare's final demand letter.

11. This Stipulation and Order contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation and Order regarding the subject matter of the instant

proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

Dated: New York, New York
May 14, 2012

Christopher Dunn, Esq.
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, N.Y. 10004
Attorneys for Plaintiffs
(212) 607-3300

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
New York, New York 10007
Attorney for Defendants City, Reyes, Facenda, Miller, Constanza and Torreda
100 Church Street, Room 3-211
New York, N.Y. 10007
(212) 442-8248

_____
Christopher Dunn, Esq.
Attorney for Plaintiff

By: _____
Mark D. Zuckerman, Esq.
Senior Counsel

SO ORDERED:
_____
U.S.D.J.
5/14/12

# APPENDIX A



```
                    FINEST MESSAGE SWITCHING SYSTEM          DATE: 05/10/12
                    GENERAL ADMINISTRATIVE INFORMATION       TIME: 00:01.49
                        SENT  5/10/12 - 00:00.18             FROM:
MESSAGE:
TO ALL COMMANDS          TAXI/LIVERY ROBBERY INSPECTION PROGRAM
```

IN LIGHT OF REPORTS ABOUT IMPROPER TREATMENT OF PASSENGERS RIDING IN LIVERY CARS ENROLLED IN THE TAXI/LIVERY ROBBERY INSPECTION PROGRAM, OR TRIP, THE PURPOSE OF THIS FINEST MESSAGE IS TO RE-EMPHASIZE DEPARTMENT POLICY WITH REGARD TO TRIP, INCLUDING AS TO WHEN, IF AT ALL, IT IS APPROPRIATE TO REMOVE, DETAIN, QUESTION OR FRISK PASSENGERS IN TAXIS AND LIVERY CABS PARTICIPATING IN THE PROGRAM.

EFFECTIVE IMMEDIATELY, MEMBERS OF THE SERVICE CONDUCTING SAFETY CHECKS OF PARTICIPATING VEHICLES IN THE TAXI/LIVERY ROBBERY INSPECTION PROGRAM (TRIP) MAY NOT REMOVE OCCUPANTS OF SUCH VEHICLES ABSENT INDEPENDENT FACTORS THAT CAUSE MOS TO FEAR FOR THEIR SAFETY, REASONABLY SUSPECT THE PASSENGER IS ARMED WITH A WEAPON, OR THAT A VIOLENT CRIME HAS BEEN OR IS BEING COMMITTED.

ALL MEMBERS OF THE SERVICE ON PATROL, INCLUDING THOSE IN CIVILIAN CLOTHES, UPON OBSERVING A TAXI/LIVERY BEARING A TAXI/LIVERY ROBBERY INSPECTION PROGRAM DECAL, MAY BRIEFLY STOP AND VISUALLY INSPECT THAT VEHICLE. IF THE DRIVER CONSENTS, A VISUAL INSPECTION MAY INCLUDE OPENING THE DOORS OF THE PASSENGER COMPARTMENT OF THE VEHICLE. HOWEVER, VEHICLE OCCUPANTS MAY NOT BE REMOVED FROM THE VEHICLE, ABSENT INDEPENDENT FACTORS THAT CAUSE THE OFFICERS CONDUCTING THE STOP TO FEAR FOR THEIR SAFETY.

THEREFORE, VISUAL INSPECTION OF THE VEHICLE SHALL NOT INCLUDE THE ROUTINE REMOVAL OF PASSENGERS FROM THE VEHICLE OR VEHICLE SEARCHES. FURTHERMORE, PASSENGERS WISHING TO LEAVE WILL NOT BE ASKED FOR IDENTIFICATION OR OTHERWISE DETAINED ABSENT FACTORS LEADING AN OFFICER TO REASONABLY SUSPECT THAT A CRIME IS BEING, HAS BEEN OR IS ABOUT TO BE COMMITTED BY A PASSENGER. PASSENGERS WILL BE FRISKED ONLY WHEN SUCH REASONABLE SUSPICION OF CRIMINAL ACTIVITY EXITS AND THE CRIME SUSPECTED IS VIOLENT IN NATURE (I.E.ROBBERY) OR, IF NOT A VIOLENT CRIME, THE OFFICER DEVELOPS INDEPENDENT REASONABLE SUSPICION THAT THE PASSENGER IS ARMED WITH A WEAPON.

IF PASSENGERS ARE DETAINED AND/OR FRISKED, A STOP, QUESTION AND FRISK REPORT (PD344-151) WILL BE PREPARED AS PER PATROL GUIDE PROCEDURE 116-33, "STOP AND FRISK." OFFICERS WILL RECORD TAXI/LIVERY ROBBERY INSPECTION PROGRAM STOPS WITH A DETAILED ACTIVITY LOG (PD112-145) ENTRY, INCLUDING THE NAME AND DRIVER/HACK LICENSE NUMBER OF THE DRIVER. ALSO, THE ACTIVITY LOG ENTRY WILL INCLUDE THE MAKE, MODEL, COLOR, YEAR AND VEHICLE REGISTRATION NUMBER OF THE VEHICLE STOPPED.

MEMBERS OF THE SERVICE WHO MAY HAVE QUESTIONS REGARDING THE CONTENTS OF THIS ORDER OR ANY OTHER ISSUE RELATING TO THE TAXI/LIVERY ROBBERY INSPECTION PROGRAM ARE ENCOURAGED TO CALL THE LEGAL BUREAU AT 646-610-5400.

THE CONTENTS OF THIS DIRECTIVE ARE TO BE READ AT TEN CONSECUTIVE ROLL CALLS. COMMANDING OFFICERS, PARTICULARLY THOSE TASKED WITH ROBBERY INVESTIGATIONS, ARE TO ENSURE COMPLIANCE WITH THE PROVISIONS OF THIS ORDER.

```
AUTHORITY: CHIEF OF DEPARTMENT          OPR: PO HESS          2358 HOURS
AUTHORIZING TERMINAL:
OPS UNIT BROADCAST MESSAGE NO:
```

# APPENDIX B



## OPERATIONS ORDER

| SUBJECT: TAXI/LIVERY ROBBERY INSPECTION PROGRAM (T.R.I.P.) | |
|---|---|
| DATE ISSUED: | NUMBER: |
| 04-27-12 | 20 |

1.     The New York City Taxi/Livery Robbery Inspection Program (T.R.I.P.) was implemented in an effort to promote the safety of taxi and livery drivers throughout New York City. It is a voluntary program which encompasses a preventive police response to crimes against taxi and livery drivers, by authorized safety checks of participating vehicles that display Taxi/Livery Robbery Inspection Program decals.

2.     All members of the service on patrol, including those in civilian clothes, upon observing a taxi/livery bearing a Taxi/Livery Robbery Inspection Program decal, may briefly stop and visually inspect the vehicle. If the driver consents, a visual inspection may include opening the doors of the passenger compartment of the vehicle. However, vehicle occupants may not be removed from the vehicle, absent independent factors that cause the members conducting the stop to fear for their safety. Therefore, "visual inspection" of the vehicle shall not include the routine removal of the passengers from the vehicle or vehicle searches. Furthermore, passengers wishing to leave will not be asked for identification or otherwise detained, absent factors leading a member to reasonably suspect that a crime is being, has been, or is about to be committed by a passenger. Passengers will be frisked only when such reasonable suspicion of criminal activity exists, and the crime suspected is violent in nature (i.e., robbery) or, if not a violent crime, the member develops independent reasonable suspicion that the passenger is armed with a weapon. If passengers are detained and/or frisked, a **STOP, QUESTION AND FRISK REPORT (PD344-151A)** will be prepared as per *Patrol Guide 212-11, "Stop and Frisk"*.

3.     Members will record Taxi/Livery Robbery Inspection Program stops with a detailed **ACTIVITY LOG (PD112-145)** entry, including: the name and driver/hack license number of the driver, make, model, color, year, and vehicle registration number of the vehicle stopped.

4.     Commanding officers will ensure that the contents of this Order are brought to the attention of members of their commands.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All Commands**

# APPENDIX C

 # POLICE STUDENT'S GUIDE
Auto Related Crimes and Procedures

**Taxi / Livery Robbery Inspection Program (T.R.I.P.)** 

T.R.I.P. was implemented in an effort to promote the safety of taxi and livery drivers throughout New York City. It is a voluntary program which encompasses a preventive police response to crimes against taxi and livery drivers, by authorizing safety checks of participating vehicles that display Taxi / Livery Robbery Inspection Program decals.

All members of the service on patrol, including those in civilian clothes, upon observing a taxi / livery bearing a T.R.I.P. decal may briefly stop and visually inspect that vehicle. If the driver consents, a visual inspection may include opening the doors of the passenger compartment of the vehicle. However, vehicle occupants MAY NOT be removed from the vehicle, absent independent factors that cause the officers conducting the stop to fear for their safety. Therefore, "visual inspection" of the vehicle SHALL NOT include the routine removal of passengers from the vehicle or vehicle searches. Furthermore, passengers wishing to leave WILL NOT be asked for identification or otherwise detained absent factors leading an officer to reasonably suspect that a crime is being, has been or is about to be committed by the passenger. Passengers WILL be frisked only when such reasonable suspicion of criminal activity exists and the crime suspected is violent in nature (i.e., robbery) or if not a violent crime, the officer develops independent reasonable suspicion that the passenger is armed with a weapon. If passengers are detained and / or frisked a Stop, Question and Frisk Report (PD 344-151) will be prepared as per Patrol Guide Procedure 212-11, "Stop and Frisk".

Officers will record Taxi / Livery Robbery Inspection Program stops with a detailed Activity Log entry, including the name and driver / hack license number of the driver. Also the Activity Log entry will include the make, model, color, year and vehicle registration number of the vehicle stopped.

**Preliminary Investigation, Recording and Transmission of Alarms for Stolen Vehicles (P.G. 207-11)**

A complainant, present at a precinct command, or other Department facility to report a stolen vehicle, must be transported by Department vehicle to the place of occurrence, or be requested to await the arrival of a uniformed member(s) of the service at the location where the crime occurred. The assigned uniformed member of the